IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| R SOURCE CORPORATION, d/b/a W5 ENGINEERING,<br><br>                Plaintiff,<br><br>     v.<br><br>SEALEVEL SYSTEMS, INC.,<br><br>                Defendant. | Case No. 3:23-cv-01601-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff R Source Corporation d/b/a W5 Engineering ("W5") filed a complaint against Sealevel Systems, Inc. ("Sealevel"), alleging breach of contract claims. Now before the Court is Sealevel's motion to compel arbitration and dismiss or stay all claims. (ECF No. 5.) The Court heard oral argument on March 6, 2024. The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.

For the reasons that follow, the Court grants Sealevel's motion to compel arbitration and stays this case pending arbitration.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND

W5 is an independent sales representative agency, incorporated and with its principal place of business in Oregon. (Compl. ¶ 1, ECF No. 1.) Sealevel is a manufacturer, incorporated and with its principal place of business in South Carolina. (*Id.* ¶ 2.) Sealevel uses independent sales representatives to market and solicit orders for the sale of its products. (*Id.*)

For over seven years, W5 contracted to serve as an independent sales representative for Sealevel. (*Id.* ¶ 5.) Most recently, the two entities signed a Sales Representative Agreement (the "Agreement") on November 30, 2020. (*Id.*; Compl. Ex. 1 ("Ex. 1") at 1, ECF No. 1-1.) Pursuant to the Agreement, W5 served as Sealevel's independent sales representative for accounts in Oregon, Washington, and Northwest Canada in exchange for commissions. (Compl. ¶¶ 6-7.)

The Agreement included an arbitration clause:

> Any claim or controversy, arising out of this agreement, upon the request of any party involved, may be submitted and settled by arbitration in accordance with the rules of The American Arbitration Association then in effect in the State of South Carolina. The decision made pursuant to arbitration shall be binding and judgment on that decision may be entered in any court having jurisdiction thereof.

(Ex. 1 at 3.)

The Agreement permitted either party to terminate the Agreement upon thirty days' written notice. (Compl. ¶ 11.) On October 24, 2022, Sealevel gave written notice, terminating the Agreement effective November 24, 2022. (*Id.*) Based on Sealevel's alleged underpayment of commissions and failure to pay post-termination commissions pursuant to the Agreement, W5 filed this action alleging two breach of contract claims. (*Id.* ¶¶ 23-36.)

## DISCUSSION

Sealevel moves to compel arbitration and for dismissal or a stay of all claims pursuant to the arbitration clause in the Agreement, arguing that a valid arbitration agreement exists and the

PAGE 2 – OPINION AND ORDER

agreement encompasses the dispute at issue. (Def.'s Mot. Compel Arbitration ("Def.'s Mot.") at 3-6, ECF No. 5.) W5 opposes Sealevel's motion, arguing that the arbitration clause is permissive and does not mandate arbitration. (Pl.'s Resp. Def.'s Mot. ("Pl.'s Resp.") at 4, ECF No. 10.)

I.      LEGAL STANDARDS

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. § 1 *et seq.*). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (citation omitted); *see also Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*, 197 F. Supp. 3d 1248, 1251 (D. Or. 2016) ("When a contract contains an arbitration clause, a presumption of arbitrability exists.") (citations omitted).

The FAA "permits a party aggrieved by the alleged refusal of another to arbitrate to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (simplified). "The FAA requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted); *Chiron*, 207 F.3d at 1130 ("[T]he [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues

as to which an arbitration agreement has been signed.'" (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 (1985))).

The district court's role under the FAA is "therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (citations omitted). "A party seeking to compel arbitration has the burden under the FAA to" establish those two prongs. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Assuming "the response is affirmative on both counts, then the [FAA] requires the [district] court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130.

## II. ANALYSIS

The Agreement between W5 and Sealevel is a written contract evidencing a transaction involving commerce, and the contract does not trigger the FAA's exception. *See* 9 U.S.C. § 1. Accordingly, the Agreement is subject to the FAA. *See Chiron*, 207 F.3d at 1130 ("Because the Agreement is 'a contract evidencing a transaction involving commerce,' it is subject to the FAA." (citing 9 U.S.C. § 2)).

The parties do not dispute that they formed a valid contract, and W5 does not raise any contract defenses such as fraud, duress, or unconscionability. *See Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F. Supp. 3d 1143, 1148 (D. Or. 2020) ("Neither party has argued that this contract was improperly formed."). Nor does W5 challenge whether the arbitration agreement, if mandatory, encompasses the current dispute. (*See* Ex. 1 at 3, the arbitration clause applies to "[a]ny claim or controversy, arising out of this agreement"; Compl. at 5-6, alleging

PAGE 4 – OPINION AND ORDER

breach of contract claims arising out of the Agreement.) Instead, W5 argues that the arbitration clause, by its terms, does not mandate arbitration.[1] (Pl.'s Resp. at 4.)

"To interpret the parties' contract, a court should look to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'"[2] *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "To resolve a dispute over the meaning of a contractual provision, th[e] court first considers the text of the disputed provision in the context of the contract as a whole to determine whether the disputed provision is ambiguous." *Williams v. RJ Reynolds Tobacco Co.*, 271 P.3d 103, 109 (Or. 2011) (citing *Yogman v. Parrott*, 937 P.2d 1019, 1021-22 (Or. 1997)). "If the meaning of the provision is clear from the text and context, then the analysis ends." *Id.* (citing *Yogman*, 937 P.2d at 1021). "If the provision is ambiguous, the court

---

[1] At oral argument, W5 argued for the first time that there is a genuine dispute of material fact about whether the parties entered into an arbitration agreement. Citing *Hansen v. LMB Mortgage Services, Inc.*, W5 suggested that a trial is necessary to resolve the factual dispute. *See Hansen v. LMB Mortg. Svcs., Inc.*, 1 F.4th 667, 669-73 (9th Cir. 2021) (remanding to district court for trial where genuine disputes of material fact existed regarding whether the plaintiff had clicked a button on a website agreeing to be bound by an arbitration agreement); *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof."). The Court disagrees. "The making of the Arbitration Agreement is 'in issue' only if [the party opposing arbitration] identifies a material issue of fact as to its formation." *Shelby v. Brookdale Senior Living, Inc.*, No. 21-15547, 2022 WL 1657245, at *2 (9th Cir. May 25, 2022) (citation omitted). W5 does not dispute that the parties entered into a written contract evidencing a transaction involving commerce, and that the contract includes an arbitration clause. There is no factual dispute about contract formation. Rather, the parties disagree about the interpretation of the arbitration agreement.

[2] The parties confirmed at oral argument that the Agreement does not include a choice of law provision, and agreed that the Court should apply Oregon law to interpret the Agreement.

PAGE 5 – OPINION AND ORDER

moves to the second step of the analysis, which is to consider other evidence of the parties' intent." *Id.* (citing *Yogman*, 937 P.2d at 1021).

The Court turns first to the text of the disputed provision in context: "[a]ny claim or controversy, arising out of this agreement, upon the request of any party involved, may be submitted and settled by arbitration . . . [and t]he decision made pursuant to arbitration shall be binding[.]" (Ex. 1 at 3.) W5 argues that the use of the word "may" gives W5, the party initiating the proceedings, the option to proceed either in federal court or in arbitration. (*See* Pl.'s Resp. at 5, "W5 had the option to choose arbitration or to file suit in this court[ and] W5 chose the latter.") In other words, W5 argues that the arbitration clause is permissive, not mandatory.

The plaintiff in *Kropke v. Dunbar* raised a similar argument. *See Kropke v. Dunbar*, No. 16-cv-08753-MWF-FFMX, 2017 WL 8186746 (C.D. Cal. Mar. 2, 2017). In *Kropke*, the arbitration agreement provided: "If the dispute is not satisfactorily resolved within sixty (60) days from the time notice thereof shall have been given to all parties, *it may be* submitted to an arbitrator, *if requested in writing by either party*, for binding determination." *Id.* at *4. The court noted that "the word 'may' is not a *per se* indicator of permissiveness, but must be read in context." *Id.* at *5 (citing *United States v. Contreras*, 895 F.2d 1241, 1243 (9th Cir. 1990)). The court further explained that, in the context of the agreement, "'may' anticipates the conditional language that follows later in the sentence; the dispute may or may not be submitted to an arbitrator, depending on whether either party requests as much." *Id.* Further, "the sentence as a whole unambiguously indicates that if one party requests a binding arbitration, the dispute must be submitted to a 'final, binding, and conclusive' arbitration." *Id.* The court noted that "[i]f Plaintiffs' view is correct, both parties must agree to the arbitration for it to go forward[,] [y]et under the clear language of the arbitration provision, only one party—'*either* party'—need

PAGE 6 – OPINION AND ORDER

request binding arbitration to trigger the obligation to arbitrate." *Id.* Accordingly, the court held, "[o]nce Defendants requested arbitration, the procedure became mandatory for both parties." *Id.*; *see also Chiarella v. Vetta Sports, Inc.*, No. 94 CIV. 5933 (PKL), 1994 WL 557114, at *3 (S.D.N.Y. 1994) ("[T]he proper interpretation is that the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party.").

The same construction applies here given the text in context. The Agreement unambiguously provides that "any party" may request arbitration and does not include language requiring that both parties must agree for arbitration to go forward. Giving full effect to the express contract language that "any party" may elect arbitration, arbitration becomes mandatory once a party requests arbitration. *See Williams*, 271 P.3d at 109 ("The court must, if possible, construe the contract so as to give effect to all of its provisions."). Indeed, if arbitration were merely optional, as W5 argues, the arbitration provision would serve no purpose. *See Guthrie v. State Farm Mut. Auto. Ins. Co.*, 522 P.2d 896, 899 (Or. 1974) (rejecting contract interpretation that rendered a contract provision superfluous); *see also Chiarella*, 1994 WL 557114, at *3 ("This Court finds defendants' contention that arbitration is purely optional to be unpersuasive. . . . If the clause were wholly optional, as defendants contend, it would serve no purpose. Parties can always submit disputes to arbitration if they both agree to do so, therefore, there would be no reason to include such a provision.").

Courts interpreting the term "may" in similar arbitration clauses have consistently held that arbitration is mandatory once one party requests arbitration. *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985) ("The use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures." (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59 (1965))); *Quantum*

PAGE 7 – OPINION AND ORDER

*Fluids LLC v. Kleen Concepts LLC*, No. 20-cv-02287-PHX-DWL, 2021 WL 242104, at *4 (D. Ariz. Jan. 25, 2021) (construing an agreement that provided that "either party 'may' submit the dispute to binding arbitration" to be mandatory); *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, 2015 WL 5186462, at *5 (N.D. Cal. Sept. 4, 2015) (addressing an arbitration clause providing that "either Party may submit the dispute to arbitration" and noting that "[s]everal courts have held that even when an arbitration clause uses permissive language, the clause still gives rise to mandatory arbitration") (citation omitted). W5 has not cited any relevant authority interpreting a similar arbitration clause to allow one party to refuse arbitration upon the other party's request.[3]

For these reasons, the Court concludes that the Agreement contains a valid, enforceable agreement to arbitrate, the arbitration clause is not ambiguous, and the agreement encompasses the dispute at issue in this litigation. Accordingly, the Court grants Sealevel's motion to compel arbitration and stays this litigation pending arbitration.[4]

---

[3] W5 relies on two Ninth Circuit cases addressing the use of the term "shall" in venue selection clauses, not "may" in arbitration clauses. The Ninth Circuit held in those cases that the language "shall be enforceable" in a specific jurisdiction is permissive unless the clause includes clear language that the referenced jurisdiction is exclusive. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) ("The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. Although the word 'shall' is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction."); *see also N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines*, 69 F.3d 1034, 1037-38 (9th Cir. 1995) ("[W]e follow *Hunt Wesson* in holding that the 'shall be enforceable' language at issue here is permissive, not mandatory, because it does not contain language 'clearly requir[ing] exclusive jurisdiction.'" (quoting *Hunt Wesson*, 817 F.2d at 77)). Here, the Agreement does not include language clearly indicating that federal court or any particular venue is the exclusive jurisdiction to resolve disputes, but does include language clearly permitting "any party" to request binding arbitration. (Ex. 1 at 3.)

[4] The Court opts for a stay instead of dismissal in an abundance of caution because of the pending appeal in *Forrest v. Spizziri*, in which the Supreme Court will address whether district courts have discretion to dismiss a case pending arbitration. *See Forrest v. Spizziri*, 62 F.4th 1201, 1206 (9th Cir. 2023) (holding that the district court "did not abuse its discretion in dismissing rather than staying the case"), *cert. granted*, 2024 WL 133822 (U.S. Jan. 12, 2024).

PAGE 8 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court GRANTS Sealevel's motion to compel arbitration (ECF No. 5), and stays this litigation pending arbitration.

DATED this 7th day of March, 2024.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge